# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

SHANAN L.,

                                Plaintiff,

      v.                                          3:19-CV-545
                                                 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.

---

PETER A. GORTON, ESQ., for Plaintiff
LUIS PERE, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 4, 6).

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for Supplemental Security Income ("SSI") on October 15, 2015, alleging disability beginning September 25, 2009. (Administrative Transcript ("T") 12, 156-61).  Plaintiff's application was denied initially on January 27, 2016. (T. 61-78).  Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Jo Ann L. Draper on March 29, 2018. (T. 28-60).  At the hearing, plaintiff amended her onset date to October 15, 2015. (T. 32).  The ALJ heard testimony from plaintiff and vocational expert ("VE") Jacqueline Crawford-Apperson. (T. 33-59).  On May 31, 2018, the ALJ issued an order denying plaintiff's

claim. (T. 9-27).  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on March 13, 2019. (T. 1-6).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational

2

> factors such as age, education, and work experience . . . . Assuming the
> claimant does not have a listed impairment, the fourth inquiry is whether,
> despite the claimant's severe impairment, he has the residual functional
> capacity to perform his past work.  Finally, if the claimant is unable to
> perform his past work, the [Commissioner] then determines whether there
> is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920.  The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that her impairment prevents her from performing

her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence

supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v.

Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012).  It must be "more than a scintilla" of evidence scattered throughout the

administrative record.  *Id.*  However, this standard is a very deferential standard of

review " – even more so than the 'clearly erroneous standard.'"  *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from

both sides, because an analysis of the substantiality of the evidence must also include

that which detracts from its weight."  *Williams on behalf of Williams v. Bowen*, 859 F.2d

255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its

3

interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

Plaintiff was forty-eight years old on the date of the administrative hearing. (T. 33). She lived in a mobile home with her fiancé, twelve-year-old stepdaughter, and nine-year-old daughter. (T. 40, 507). Plaintiff graduated from high school in regular education classes, and shortly after graduation took a vocational training course in computer data entry. (T. 34, 507). Prior to applying for disability, plaintiff had worked as a restaurant hostess, waitress, and convenience store cashier. (T. 173). Her most recent employment ended in 2008. (T. 173, 507).

Plaintiff was diagnosed with Sjögren's syndrome,[1] lupus, and fibromyalgia in 2009. (T. 36-40, 544). Her primary symptoms were arthritis, rash, dry mouth, and dry eyes. (T. 544). She testified that she could not work due to the consistent fatigue, pain,

---

[1] Sjögren's syndrome is an autoimmune disorder that affects the mucous membranes and moisture-secreting glands of the eyes and mouth, resulting in decreased tears and saliva. It is often associated with other autoimmune disorders such as rheumatoid arthritis and lupus. https://www.mayoclinic.org / diseases-conditions/sjogrens-syndrome/symptoms-causes/syc-20353216

and stiffness that made it difficult to walk or otherwise move. (T. 37-38).  Plaintiff also

testified that she experienced memory loss and confusion that had been attributed to

"lupus fog" or "fibro fog." (T. 38, 49-50).

Plaintiff had been prescribed a cane, which she primarily used outside the home.

(T. 46, 503).  When grocery shopping, she typically used a motorized shopping cart to

limit the amount of time that she was walking or standing. (T. 41).  She was to able to

cook on a regular basis and perform some household chores, but was unable to bend or

stand for extended periods of time, and usually received assistance from her fiancé or

the children for tasks such as laundry and washing the dishes. (T. 44-47).

The ALJ's decision provides a detailed statement of the medical and other

evidence of record. (T. 14-21).  Rather than reciting this evidence at the outset, the court

will discuss the relevant details below, as necessary to address the issues raised by

plaintiff.

## IV.   **THE ALJ'S DECISION**

After reviewing the procedural history of the plaintiff's application and stating the

applicable law, the ALJ found that plaintiff had not engaged in substantial gainful

activity ("SGA") since the application date of October 15, 2015. (T. 14).  At step two of

the sequential evaluation, the ALJ found that plaintiff had the following severe

impairments: Sjögren's syndrome; fibromyalgia, systemic lupus erythematosus; diabetes

mellitus; and anemia. (T. 14-17).  At step three of the evaluation, the ALJ found that

plaintiff did not have an impairment or combination of impairments that met or

medically equaled the severity of a Listed Impairment.  (T. 17-18).

At step four, the ALJ found that plaintiff had the RFC to perform less than the full

5

range of sedentary work as defined in 20 C.F.R. 416.967(a), in that plaintiff could lift or carry ten pounds occasionally and five pounds frequently; could stand and/or walk for a total of two hours per eight-hour workday; could sit for a total of six hours per eight-hour workday; could only occasionally climb, balance, stoop, kneel, crouch, and crawl; could never climb ropes, ladders, or scaffolds; and could have no more than occasional exposure to extreme heat and cold. (T. 18-21).

In making the RFC determination, the ALJ stated that she considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 416.929" and Social Security Ruling ("SSR") 16-3p. (T. 18). The ALJ further stated that she considered opinion evidence pursuant to 20 C.F.R. § 416.927. (*Id*.) The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 18-19).

The ALJ then determined that plaintiff was unable to perform any past relevant work. (T. 22). However, the ALJ evaluated the VE testimony, and found that "considering the [plaintiff']'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform." (T. 22-23). Accordingly, the ALJ determined that plaintiff was not disabled. (T. 23).

6

V.   **ISSUES IN CONTENTION**

Plaintiff raises two arguments:

1.   The ALJ improperly weighed the medical evidence, particularly by her failure to apply the treating physician rule to the purported opinion of Dr. Henda Bouali. (Plaintiff's Brief ("Pl.'s Br.") at 8-14) (Dkt. No. 9); (Plaintiff's Reply Brief ("Pl.'s Rep. Br.") at 1-2) (Dkt. No. 14).

2.   The ALJ's step five determination is not supported by substantial evidence. (Pl.'s Br. at 16-17).

The Commissioner contends that the ALJ's analysis of the medical evidence and her ultimate RFC determination are supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 4-15) (Dkt. No. 11).  For the following reasons, this court agrees with the defendant and will affirm the Commissioner's decision.

**DISCUSSION**

VI.   **RFC/WEIGHT OF THE EVIDENCE/TREATING PHYSICIAN**

A.   **Legal Standards**

1.   **RFC**

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-

00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.    Weight of the Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and

carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL
374183, at *2-3 (1996).  Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues
are not "medical issues," but are "administrative findings."  The responsibility for
determining these issues belongs to the Commissioner.  *See* SSR 96-5p, 1996 WL
374183, at *2.  These issues include whether the plaintiff's impairments meet or equal a
listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether
the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner,
the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d).  The
ALJ must clearly state the legal rules that he applies and the weight that he accords the
evidence considered.  *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2
(S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL
3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical
opinion of a claimant's treating physician, . . . the opinion of the treating physician is
not afforded controlling weight where . . . the treating physician issued opinions that are
not consistent with other substantial evidence in the record . . . ."  *Halloran v. Barnhart*,
362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20
C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If an ALJ decides not to give the treating
source's records controlling weight, then he must explicitly consider the four *Burgess*
factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of
medical evidence supporting the opinion; (3) the consistency of the opinion with the

9

remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)).  "[T]he ALJ must 'give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion.' " *Id.* at 96 (citing *Halloran v. Barnhart*, 362 F.3d at 32).  Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error.  *Id.*  It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed." *Id.*

### B.    Application

As discussed above, the ALJ determined that plaintiff could perform less than the full range of sedentary work. (T. 18).  In reaching her RFC determination, the ALJ assigned "little weight" to a Medical Source Statement dated March 26, 2018 and signed by Sara Smith, a nurse practitioner ("N.P.") who had treated plaintiff for lupus under the supervision of Dr. Henda Bouali. (T. 21).  On the form, N.P. Smith opined that the pain and fatigue associated with lupus would diminish plaintiff's ability to concentrate, maintain a consistent work pace, and remain on task in the workplace, and would force her to take additional breaks during the workday. (T. 611).  N.P. Smith estimated that plaintiff would be forced to miss four workdays per month due to her impairments. (T. 612).

The ALJ justified the weight assigned to the Medical Source Statement by noting that N.P. Smith was not an acceptable medical source, and her opinion was therefore not

entitled to a heightened level deference pursuant to the SSA rules. (T. 21).  The ALJ still evaluated N.P. Smith's opinion for evidence that would show the severity of plaintiff's impairments and the resulting impact on her ability to work, in accordance with 20 C.F.R. § 416.913(d) and SSR 06-3p. (*Id*.)  She concluded that N.P. Smith's opinion was inconsistent with plaintiff's treatment records, including Dr. Bouali's examination notes. (*Id*.)  Dr. Bouali had treated plaintiff's lupus since at least August 2016. (T. 530-61). During that time, Dr. Bouali found that plaintiff was tolerating her prescription medication well, and that she was able to reduce, but not eliminate, the dosage at times with minimal adverse effects. (T. 19, 530, 541, 545).  Dr. Bouali had also recommended that plaintiff keep active with low-impact exercises, in addition to managing her symptoms with medication and vitamin D supplements. (T. 545).

Plaintiff contends that N.P. Smith's Medical Source Statement was co-signed by Dr. Bouali.  She further contends that the ALJ erred by her failure to evaluate the document in accordance with the treating physician rule, or in the alternative, to contact Dr. Bouali to determine whether the document reflected her medical opinion. (Pl.'s Br. at 8-16).  These arguments are premised on two well-established principles.  First, when a treating physician signs a report prepared by a nurse practitioner, the report should be evaluated under the treating physician rule unless evidence indicates that the report does not reflect the doctor's views.  *See Djuzo v. Comm'r of Soc. Sec.,* No. 5:13-CV-272 (GLS/ESH); 2014 WL 5823104 at *4 (N.D.N.Y. Nov. 7, 2014) (collecting cases). Second, the ALJ has a duty to develop the record when an inconsistency or ambiguity arises.  20 C.F.R. § 416.912(e).  However, plaintiff's application of those principles to

this case appears to be wholly speculative and unsupported by the record evidence.  Dr. Bouali's signature does not appear on the Medical Source Statement, and the record evidence does not raise any question or ambiguity as to whether Dr. Bouali intended to adopt N.P. Smith's opinion of plaintiff's functional limitations.

While Dr. Bouali's name appears on the Medical Source Statement, there is no indication that Dr. Bouali actually reviewed or signed the document. (T. 612).  Based upon this court's review of the document, it is evident that the Medical Source Statement was originally drafted with Dr. Bouali's name pre-printed beneath a single blank signature line. (*Id*.)  However, Dr. Bouali's pre-printed name was crossed out by hand, and replaced with a handwritten "Sara Smith, N.P."  (*Id*.)  N.P. Smith's signature appears on the signature line above her name. (*Id*.)  A new handwritten signature line was drawn just to the right of N.P. Smith's signature, with the words "Henda Bouali, M.D." handwritten underneath it. (*Id*.).  This new signature line is blank.[2] (*Id*.)

Plaintiff has not identified any record evidence outside the four corners of the document to suggest that Dr. Bouali had adopted the Medical Source Statement.  For example, the hearing transcript is silent on the issue.  The Medical Source Statement, dated March 26, 2018, was completed after the ALJ's hearing, and is therefore not referenced in the hearing transcript.[3] (T. 612).  Plaintiff raised the issue with the Appeals

---

[2] All of the handwriting on the Medical Source Statement, including the handwritten "Henda Bouali, M.D.," appears to be by the same person.  Most likely, N.P. Smith completed the entire document.  However, the court need not resolve this issue to determine that the ALJ's evaluation of the Medical Source Statement was supported by substantial evidence.

[3] Plaintiff testified during her March 15, 2018 hearing that she received rheumatology treatment for lupus from Dr. Bouali and N.P. Smith. (T. 38).  The ALJ ordered that the administrative record be kept open for an additional fourteen days so that plaintiff could provide previously requested records

Council, but did not provide any evidence to support the argument.

In the absence of such evidence, there is no ambiguity that the ALJ should have investigated. *See Lyons v. Astrue*, No. 11–CV–246–TLW; 2012 WL 4006007 (N.D. Okla. 2012) (finding that ALJ was not required to contact treating psychiatrist regarding opinion letter only signed by case manager and lacking psychiatrist's signature). This is not a case where the ALJ had reason to question whether Dr. Bouali had signed or intended to sign the document. *See Horton v. Barnhart*, No. 03 Civ. 0076(HB), 2004 WL 514759, at *3 (S.D.N.Y. 2004) (remanding where ALJ did not attempt to identify author of opinion letter that lacked any signature); *Giles v. Astrue*, No. EDCV 08-1088-JC; 2009 WL 2984049, at *7 (C.D.Cal. Sept.17, 2009) (". . . the fact that the treating physician's signature was illegible is not a legitimate basis upon which to reject the opinion. Rather, the fact that the ALJ could not decipher the signature creates an ambiguity about which the ALJ should have inquired."); *Tracy v. Astrue*, 518 F. Supp. 2d 1291, 1300–01 (D. Kan. 2007) (holding that ALJ must make a reasonable effort to ascertain the identity of a physician whose signature is illegible). Therefore, the ALJ's determinations that the Medical Source Statement did not come from an acceptable medical source, and that it was entitled to little weight in light of conflicting medical evidence in the record, were supported by substantial evidence.

Plaintiff also contends that the ALJ failed to identify any other substantial evidence to support her RFC determination. This court does not agree. In addition to Dr. Bouali's treatment notes, the ALJ summarized the findings in plaintiff's other

---

from her rheumatologist. (T. 31).

treatment notes concerning her Sjögren's syndrome, lupus, fibromyalgia, anemia, and diabetes. (T. 20). These notes described her Sjögren's syndrome symptoms as "well-controlled" with treatment of dry eyes and dry mouth by over-the-counter medication. (T. 19, 336, 340). In addition to Dr. Bouali's treatment notes indicating that plaintiff's lupus was responding well to medication, the ALJ also cited multiple physician references to lab results that showed no abnormalities. (T. 340, 423, 558, 564). Similarly, plaintiff's treating physician described her fibromyalgia symptoms, including muscle pain and stiffness, as stable and controlled by medication, although plaintiff still exhibited widespread tender points.[4] (T. 326, 423, 544).

The ALJ also noted that plaintiff 's treatment record did not reflect any complications from plaintiff's low iron levels following her anemia diagnosis. (T. 20). Plaintiff's physicians had briefly tapered off some of her medication in an attempt to correct the anemia, but resumed the dosage when this aggravated her lupus and fibromyalgia symptoms. (T. 19-20, 544). Similarly, plaintiff's diabetes, first diagnosed in 2009, had not led to any recognized complications such as neuropathy, vision changes, and foot ulcers despite plaintiff's non-compliance with recommendations that she change her diet and check her blood sugar on a regular basis. (T. 20, 267, 274, 294, 336).

The ALJ also considered the opinions of consultative examiners Dr. Gilbert Jenouri and Dr. Sara Long as part of the RFC determination. (T. 20-21). Dr. Jenouri conducted a physical consultative examination of plaintiff on January 20, 2016. (T. 502-

---

[4] Tender points are painful areas around the joints that are extremely sensitive to touch. https://www.webmd.com/fibromyalgia/guide/fibromyalgia-tender-points-trigger-points#1

505).  He opined that plaintiff appeared to be in no acute distress during the examination, and could walk on heels and toes without difficulty. (T. 503).  His report also noted that plaintiff had a prescription for a cane, and that plaintiff's gait improved while using it. (*Id*.)  During Dr. Jenouri's examination, plaintiff exhibited some reduced range of motion, flexibility and extension in her lumbar spine, wrists, hips, and ankles, despite full strength in her upper and lower extremities. (T. 504-505).

In Dr. Jenouri's opinion, plaintiff had "mild to moderate" limitations in certain areas: walking and standing for long periods; climbing stairs; bending; lifting, and carrying.[5] (T. 505).  The ALJ assigned "partial weight" to this opinion, in light of plaintiff's hearing testimony regarding her frequent use of her cane outside the home and her need to use a motorized shopping cart while grocery shopping. (T. 21, 41, 46).  Based on the entirety of the medical and other record evidence, the ALJ thus concluded that plaintiff had greater mobility impairments than reflected in the one-time consultative examination. (T. 21).

Dr. Long performed a psychiatric consultative examination of plaintiff on January 20, 2016. (T. 507-510).  During the examination, plaintiff reported that she was not currently receiving psychiatric treatment, but that she had been prescribed psychiatric medication on an outpatient basis in the past. (T. 507).  In Dr. Long's

---

[5] As a general rule, a consultative physician's use of the terms "moderate" and "mild" as they related to restrictions on physical functions such as standing, walking, and sitting is too vague to constitute substantial evidence that the plaintiff could perform the requirements of light or sedentary work. *Curry v. Apfel*, 209 F.3d 117, 123-24 (2d Cir. 2000) (superseded by statute on other grounds). While this general statement may still be true, more recent cases have held that when there is other medical evidence, in addition to an RFC evaluation using terms such as "mild" and "moderate," such terms may properly be relied on the RFC analysis. *See Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013).

opinion, plaintiff appeared cooperative, with good social skills and appropriate eye contact. (T. 508).  Her thought processes appeared coherent and goal-directed, with intact attention and concentration. (*Id*.)  Dr. Long observed no limitations in plaintiff's ability to follow and understand simple directions and perform simple tasks. (T. 509). She also opined that plaintiff was able to maintain a schedule, relate adequately with others, make appropriate decisions, and adequate manage stress. (*Id*.)  Dr. Long found evidence of psychiatric impairments, but none that would interfere with plaintiff's ability to function on a daily basis. (*Id*.) She recommended that plaintiff begin therapy if her reported depression symptoms increased. (*Id*.)

The report of a consultative examiner may serve as substantial evidence upon which the ALJ may base her decision. *Herb v. Colvin*, No. 14-CV-156, 2015 WL 2194513, at *5 (W.D.N.Y. May 6, 2015) (citing *Finney ex rel. B.R. v. Colvin*, No. 13-CV–543A, 2014 WL 3866452, at *7 (W.D.N.Y. Aug. 6, 2014) (Rep't-Rec.)); *Simmons v. Comm'r of Soc. Sec.*, No. 13-CV-5504, 2015 WL 2182977, at *16 (S.D.N.Y. May 8, 2015) (citing *Mongeur*, 722 F.2d at 1039).  Here, the ALJ considered the consultative opinion of Dr. Jenouri, numerous treatment notes, and testimonial evidence to assess plaintiff's physical RFC, and considered the consultative examination of Dr. Long and plaintiff's minimal psychiatric treatment history to assess plaintiff's mental RFC. (T. 20-21).  Thus, the ALJ's determination that plaintiff was capable of performing less than the full range of sedentary work was supported by substantial evidence.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to

weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.).

## VII.  VE/Number of Jobs

### A.    Legal Standards

If a claimant is unable to perform a full range of a particular exertional category of work, or the issue is whether a claimant's work skills are transferable to other jobs, then the ALJ may utilize the services of a vocational expert.  20 C.F.R. §§ 404.1566, 416.966.  A vocational expert may provide testimony regarding the existence of jobs in the national economy and whether a particular claimant may be able to perform any of those jobs given his or her functional limitations.  *See Rautio v. Bowen*, 862 F.2d 176, 180 (8th Cir. 1988); *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983).

If the ALJ utilizes a VE at the hearing, generally, the VE is questioned using a hypothetical question that incorporates plaintiff's limitations. Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence, *see Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983), a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony.  *See De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996).  The Second Circuit has stated that there must be "substantial record evidence to support the assumption upon which the vocational expert based [her] opinion." *Dumas*, 712 F.2d at 1554.  *See also Peatman v. Astrue*, No. 5:10-CV-307, 2012 WL 1758880, at *7 n.5 (D. Vt. May 16, 2012) (the hypothetical

17

question posed to the VE must accurately portray the plaintiff's physical and mental impairments) (citations omitted); *Green v. Astrue*, No. 08 Civ. 8435, 2012 WL 1414294, at *18 (S.D.N.Y. April 24, 2012) (citing *Dumas,* 712 F.2d at 1553-54).

### B.    Application

Plaintiff argues that because the ALJ erred with respect to her RFC analysis, the hypothetical question did not take all of plaintiff's impairments into account.  (Pl.'s Br. at 16).  However, because this court has found that the ALJ's findings regarding plaintiff's RFC were supported by substantial evidence, her hypothetical question that mirrored the RFC and the resulting reliance upon the VE testimony were similarly supported by substantial evidence. (T. 22-23, 55-57).

Plaintiff's counsel also contends that the VE's testimony did not provide substantial evidence for the ALJ to conclude that there were a significant number of jobs in the national economy that plaintiff could perform. (Pl.'s Br. at 16-17).  At the hearing, the VE identified three representative jobs that plaintiff could perform: document preparer, with 150,000 jobs in the national economy; printed circuit board assembly touch up screener, with 52,400 jobs in the national economy; and table worker, with 24,350 jobs in the national economy. (T. 23, 55-56).

On cross-examination by plaintiff's counsel, the VE testified that her estimates of the number of jobs available were based on Bureau of Labor statistics that conformed to Occupational Employment Survey ("OES") figures. (T. 58-59).  In his brief, plaintiff's counsel asserts that these OES figures apply to broad job classifications of multiple job titles, and that it was possible that plaintiff would be unable to perform some of the jobs

in that larger classification due to her functional limitations and educational background. (T. 82).  Neither the ALJ nor plaintiff's counsel pursued this line of questioning during the VE testimony. (T. 56-59).  Plaintiff contends that the ALJ's reliance on the overly broad job numbers provided by the VE constitutes error requiring remand.  This court disagrees.

"Courts have generally held that what constitutes a 'significant' number is fairly minimal." *Fox v. Comm'r of Soc. Sec.*, No. 6:02-CV-1160, 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009).  In *Koutrakos v. Colvin*, Magistrate Judge Joan Margolis discussed the "significant numbers issue" and reviewed some of the case law discussing whether "significant numbers" existed.  *Koutrakos v. Colvin*, No. 3:13-CV-1290, 2015 WL 1190100, at *20-22 (D. Conn. Mar. 16, 2015).  Magistrate Judge Margolis first pointed out that "[n]either the Social Security Act, nor the Commissioner's Regulations or Rulings provide a definition for a 'significant' number of jobs." *Id.* at *21.  The court is generally guided by numbers that have been found "significant" in other cases.  *Id.* (citing *Schadenfroh v. Colvin*, No. 09-CV-223, 2014 WL 1260123 (S.D. Ind. Mar. 27, 2014)).  Significant numbers include 408 jobs in the regional economy and 98,008 jobs in the national economy; and 180 jobs in the regional economy and 40,027 jobs nationally.  *Barbato v. Astrue*, No. 09-CV-6530, at *7 (W.D.N.Y. July 7, 2010) (citing *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (1400 jobs was significant)[6] (citing cases); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (174 jobs in the local

---

[6] Although the court in *Lee* did not specify that it was referring to the "local" economy, the case that it cited for the proposition that 1350 jobs was "significant" referred to numbers in the local economy. 988 F.2d at 794 (citing *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)).

economy, 1600 in the state, and 80,000 in the national economy were significant);

*Dumas v. Schweiker*, 712 F.2d 1545, 1549, 1553-54 (2d Cir. 1983) (150 jobs in the

local economy and 112,000 in the national economy were significant numbers)). *See*

*also Roe v. Colvin*, No. 1:13-CV-1065, 2015 WL 729684, at *7 (N.D.N.Y. Feb. 19,

2015) (630 jobs locally and 44,000 nationally was significant); *McCusker*, 2014 WL

6610025, at *3 (100 jobs in the Capital Region; 2,250 in New York State, and 74,470

nationally was significant); *Gray v. Colvin*, No. 12-CV-6485, 2014 WL 4146880, at *6

(W.D.N.Y. Aug. 19, 2014) (60 jobs regionally, over 16,000 nationally was significant).

The Second Circuit has noted "the marked absence of any applicable regulation

or decision of this Court requiring a vocational expert to identify with greater specificity

the source of his figures or to provide supporting documentation" and concluded "[t]he

ALJ did not need to find specific numbers of jobs – all he was required to do was find

that 'substantial' positions exist." *Brault*, 683 F.3d at 450.  Still, courts have remanded

where the ALJ relied upon VE testimony that failed to reliably reflect the number of

jobs that a plaintiff could actually perform in light of his or her RFC.  *Marvin v. Colvin*,

No. 3:12-CV-1779, 2014 WL 1293509, at*10 (N.D.N.Y. March 31, 2014) (remanding

where VE testified that his job figures included positions that plaintiff would not be

able to perform due to an RFC that limited her to unskilled light work); *Rosa v. Colvin*,

3:12-CV-170 (LEK/TWD), 2013 WL 1292145 (N.D.N.Y. Mar. 27, 2013) (remanding

where VE testified that his job estimates included positions that plaintiff would not be

able to perform because of his functional limitations.); *see also Snow v. Colvin*, No.

3:15-CV-694 (FJS), 2016 WL 2992145, at *4 (N.D.N.Y. May 20, 2016) (remanding for

reconsideration of expert evidence when plaintiff had RFC to perform less than full range of sedentary work, and VE testified that he had made no attempt to adjust broad national job numbers to reflect plaintiff's functional limitations).

In this case, neither the ALJ nor plaintiff counsel pressed the VE on the reliability of her job figures after she mentioned her use of the OES. (T. 58-59).  But even if the court assumes, in the absence of such testimony, that the job figures cited by the VE would be significantly diminished by plaintiff's nonexertional limitations and educational background, the ALJ would still have had substantial evidence to determine that a "significant" number of jobs (as that term has been defined by the courts) was available to plaintiff.  *See Michelle M. v. Comm'r of Soc. Sec.*, No. 3:18-CV-1065 (TWD), 2020 WL 495170, at *9 (N.D.N.Y. Jan. 30, 2020) ("even if the data provided by the VE came from OES job groups rather than the three specific DOT job titles, the 'VE still demonstrated a significant number of jobs would have existed in the national economy' with a total of 107,230 jobs between these three occupations.").  In this case, the VE testified that a total of 226,750 jobs would have existed in the national economy across the three representative occupations, using the broad OES figures. (T. 55-56). Even if the court assumes that only 10% of those jobs could actually be performed by plaintiff, that would still represent over 22,000 jobs in the national economy.  Because the VE testimony would still reliably indicate that jobs existed in significant numbers that plaintiff could perform, this court finds any error regarding the source or specificity of the VE's job statistics to be harmless.

**WHEREFORE,** based on the findings above, it is hereby

21

ORDERED, that the decision of the Commissioner is **AFFIRMED** and this case

**DISMISSED**, and it is

ORDERED, that the Clerk enter judgment for **DEFENDANT**.

Dated: May 12, 2020

Andrew T. Baxter
U.S. Magistrate Judge